UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 09-10193-RWZ |
| ) | |
| FRANK T. DEMAIO, ) | |
| Defendant ) | |
| ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government's submits this Memorandum in support of its 18 month sentencing recommendation, which is at the bottom of the advisory guidelines sentencing range. DeMaio is an unexceptional upper middle-class tax cheat who tried to beat the system so he could support his expensive lifestyle, buy a big house and a boat and join the yacht club. A sentence of incarceration is necessary to send a strong deterrent message both to other small business owners contemplating not reporting all their income to the IRS, and to DeMaio who continues to claim that his actions were merely a "mistake."[1]

The government opposes DeMaio's request for a lesser sentence based on a claimed diminished capacity because there is no evidence that his ADHD contributed in any way to his offense conduct. The government opposes DeMaio's request for a lesser sentence based on aberrant behavior because DeMaio's conduct was not a single criminal occurrence of limited duration, but involved filing false tax returns in four successive years, in which he failed to report a total of $748,544 in income and avoided paying $222,807 in federal income taxes. PSR ¶11. Finally, the government opposes DeMaio's request for a lesser sentence based on his family circumstances,

---

[1] DeMaio's objections to the PSR at pg. 28; see also Mrs. DeMaio's statement to Probation indicating that her husband had made a "careless error" in reporting his earnings to the IRS. PSR ¶55.

because he has failed to establish that the harm to his family which might result from his incarceration exceeds that ordinarily incident to incarceration for similarly situated defendants. U.S.S.G. §5H1.6, comment n. 1(B)(ii).

**Offense Conduct**

DeMaio pleaded guilty on July 22, 2009 to one count of subscribing to a false individual income tax return for tax year 2003. DeMaio operated his own successful mortgage brokerage business from at least 1999 through 2006. PSR ¶83. Rather than concerning himself with the details of preparing his own tax return, DeMaio instead hired a professional tax preparer to do so. The government agrees with DeMaio that his method of cheating the government of the taxes he owed was therefore quite simple: for each of the tax years from 2002 through 2005, he provided his tax preparer with a false figure for his business receipts which, as he well knew, was substantially less than the actual amount he had received. As a result, the preparer produced returns which DeMaio submitted to the Internal Revenue Service that failed to include a total of $748,544 in income. DeMaio thereby avoided paying $222,807 in federal income taxes during those four years. PSR ¶11. During that same time, however, DeMaio's success provided him the means to purchase a nearly $900,000 home in North Andover, another property in Florida, a thirty-foot pleasure boat and a boat slip at the Newburyport Yacht Club. PSR ¶¶13, 60. He and his wife also spent $95,000 on credit card charges, more than $23,000 for pleasure boating and $275,000 on their home. PSR ¶13. For three of the four years, DeMaio wrote checks on his business account to "cash," his wife and himself, totaling approximately $100,000. PSR ¶13. DeMaio thereby enriched himself and his family at the expense of other honest taxpayers.

**18 U.S.C. §3553(a)**

The first statutory sentencing factors are "the nature and circumstances of the offense, and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1).

DeMaio's offense involved a failure to report income and thus to avoid paying over $200,000 in federal taxes. "While tax fraud is not violent in nature, at its heart, it is theft, specifically theft of money to which the public is entitled." United States v. Taylor, 499 F.3d 94, 102 (1st Cir. 2007), judgment vacated on other grounds, Taylor v. United States, 128 S.Ct. 8783 (2008); United States v. Trupin, 475 F.3d 71, 76 (2d Cir. 2007) (the defendant "in effect stole from his fellow taxpayers through his deceptions."). "Tax offenses, in and of themselves, are serious offenses," with greater tax losses being more harmful to the treasury and more serious than smaller ones. U.S.S.G. §2T1.1, comment. (backg'd.)

DeMaio's crime was not a single occurrence, but was repeated in four successive years, during which time he had ample opportunity to consider his actions and decide whether or not to do it again. Each time, DeMaio made the conscious decision to hide his income and cheat the system. DeMaio stopped only after he was caught, and he only filed amended returns - and then for only three of the four years - after he was caught. Had the IRS not discovered his crime, it is likely it would be continuing to this day.

DeMaio's history and characteristics provide no support for a reduced sentence. To the contrary, DeMaio grew up in an "affluent neighborhood" where he was raised by both parents, graduated from Needham High School, and earned a Bachelor's degree in business administration from St. Michael's College in Vermont. PSR ¶¶ 43, 72, 73. DeMaio is married and has four healthy children. PSR ¶¶ 54-59. DeMaio is apparently hard-working and motivated, for years operating his

own business. Despite the tremendous opportunities he was afforded, DeMaio chose to cheat on his taxes by failing to report nearly $750,000, thus resulting in a theft from the public of more than $200,000.

### The Need for Deterrence

Contrary to DeMaio's assertion that the only purpose served by sending him to prison would be punishment, an important consideration in this case is the need to send a sufficient message of deterrence to others. 18 U.S.C. §3553(a)(2)(B). DeMaio committed his offense while owning and operating a small business. Other small business owners in similar situations need to know that there are serious consequences to defrauding the Internal Revenue Service by failing to report all their income.

While recognizing that imprisonment imposes costs on the government, the Sentencing Commission noted that any such costs "are inconsequential in relation to the potential increase in revenue," citing to 1987 estimates that income taxes are underpaid by $90 billion annually. U.S.S.G. §2T1.1, comment. (backg'd.).

A message of deterrence also needs to be sent to DeMaio to make it clear that his actions were serious and criminal, not merely a "mistake," or a "careless error" as DeMaio and his wife have characterized it. DeMaio's bare assertion that his conduct will not recur is difficult to credit when he suggests that his failure to report all his income resulted from mere negligence.

### DeMaio's Departure Requests Should be Rejected

DeMaio argues three grounds in support of his request that the Court impose a sentence below the advisory guidelines range. None of those reasons, individually or taken together, support a lesser sentence, much less the probationary sentence he proposes. Furthermore, none of the cases

cited by DeMaio support the relief he seeks. Rather, they simply highlight the ordinariness of DeMaio's situation as a typical first time white-collar offender, with no unusual mental or family issues, who should be sentenced accordingly.

**Reduced Mental Capacity**

DeMaio seeks a departure under §5K2.13 claiming, without any evidentiary support, that he suffers from a significantly reduced mental capacity (ADHD) which "contributed substantially to the commission of the offense." The only evidence submitted in support of this departure, DeMaio's written mental evaluation, draws no connection between his ADHD and his offense conduct. Since there is no evidence that DeMaio was suffering from diminished capacity at the time of the offense, there is no basis for a downward departure on that account. United States v. Godin, 489 F.3d 431, 437 (1st Cir. 2007) (affirming denial of departure for lack of such evidence).

The lack of such evidence is unsurprising, since there is no apparent correlation between DeMaio's offense conduct and his claimed ADHD. DeMaio argues that the "preparation of tax returns is often a complex and daunting task even for someone without ADHD." Objections, PSR at pg. 27. However, that is irrelevant here because he did not prepare his own returns, but instead hired a professional to do so for him. DeMaio "simply failed to provide his tax return preparer with accurate gross receipt figures which ultimately led to the filing of a false tax return." Id. at pg. 28. DeMaio's ADHD is irrelevant because his conduct "was unsophisticated and involved no significant planning." Id.[2]

The evidence also reflects that DeMaio was in fact fully capable of determining and reporting

---

[2] Some might consider operating a successful business to be "a complex and daunting task even for someone without ADHD," but DeMaio managed to do so.

5

his total receipts, despite his ADHD.  In April 2006, DeMaio reported accurately to the Massachusetts Division of Banks <u>all</u> of his business receipts, whereas one month earlier he had under-reported his receipts by more than $30,000 to his tax return preparer.  PSR ¶14.  Furthermore, if the ADHD were to blame, the record should reflect that DeMaio under-reported his income in some years and over-reported it in others.  That was never the case, as he always under-reported it.

As for the several cases cited by DeMaio, none support the relief he requests.  To the contrary, DeMaio's modest ADHD issues pale in comparison to the serious and substantial mental problems suffered by the defendants in those cases.

The defendant in <u>United States v. Ribot</u>, 97 F.Supp.2d 74 (D. Mass. 1999) (Gertner, J.), was raised in poverty, with an extremely abusive and violent father, struggled to raise himself up and work for various community organizations despite alcohol abuse and mental illness consisting of "major depressive disorder with potential life threatening consequences, " culminating in a suicide attempt.  In contrast to the lack of any such evidence in the present case, Ribot's psychiatrists submitted letters and affidavits opining as to his conditions' contribution to his offense and warning that imprisonment would be an obstacle to his ongoing and successful treatment.  <u>Id</u>. at 83.  Additional grounds for departure in that case included the defendant's extraordinary vulnerability to abuse in prison and his extraordinary rehabilitation, neither of which are present here.  <u>Id</u>. at 84.

In <u>United States v. Shore</u>, 143 F.Supp. 2d 74 (D. Mass. 2001) (Gertner, J.), the defendant suffered from depressive disorder and post traumatic stress syndrome resulting from the death of her 12 year old daughter from leukemia, leading eventually to the defendant's suicide attempt.  As in <u>Ribot</u>, there was evidence in the form of a psychiatrist's opinion that her mental capacity contributed to her offense conduct.  <u>Id</u>. at 82.

In United States v. Herbert, 902 F.Supp. 827, 829 (D. N.D. Ill. 1995), the defendant's mental state was found to be "extremely impaired," consisting of "a severe depressive disorder compounded by a pathological gambling disorder and alcohol dependence."

In United States v. McBroom, 124 F.3d 533, 534, 540 (3d Cir. 1997) (district court's decision to not depart vacated and remanded for further proceedings), the defendant suffered from bipolar disorder, manic depression and multiple disorders of impulse control, had abused alcohol and drugs, and had been sexually abused continuously in his childhood and adolescence by his father. While it sent the case back for re-sentencing, the Court of Appeals cautioned that "a mere reduction in mental capacity is not sufficient to warrant a departure, that the reduced mental capacity has to be "significant" before a departure may be considered, and - if granted - the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense. Id. at 548.

DeMaio's modest ADHD is unlike anything suffered by the defendants in the cases he relies on, and in any event had nothing to do with his offense conduct. There is no basis for a reduced mental capacity departure.

**Aberrant Behavior**

In requesting a departure for aberrant behavior, DeMaio focuses exclusively on the one false tax return charged in the Information, obviously conceding that this departure applies only if the defendant "committed a single criminal occurrence or single criminal transaction" of limited duration. §5K2.20(b). DeMaio fails to address the fact that he actually under-reported his income in four successive tax years, thus making it neither a single occurrence nor of limited duration. PSR ¶¶11-12. Nor does he elaborate on what he means when he states that his offense conduct "can be explained by a peculiar set of circumstances that were exacerbated by his ADHD." Objections, PSR

at pg. 28.

Again, the single case relied on by DeMaio fails to support his departure request. In <u>United States v. Germosen</u>, 473 F.Supp. 2d 221, 224 (D. Mass. 2007) (Gertner, J.), the court granted a departure on this basis, describing the defendant as "[a] man who struggled all his life, supported his community, at great personal risk, and then made a mistake." In doing so, Judge Gertner distinguished Germosen from those who would not merit such a departure, including the "well-heeled banker who commits a substantial fraud, all the while supporting the local symphony and countless community groups," and the "white-collar offenders who try to buy their way out of trouble by pointing to their charitable contributions." <u>Id</u>. at 223-224. Here, DeMaio's references to his being a "valued member of the community" and a soccer coach for several years puts him well within Judge Gertner's category of offenders undeserving of an aberrant behavior departure.

**<u>Family Circumstances</u>**

Similarly, the impact of DeMaio's incarceration on his family, in particular the added burden on his wife to care for their children, is an insufficient reason for a probationary sentence. A negative personal and financial impact on a defendant's family is something which is common to all defendants and, as such, "is contrary to 18 U.S.C. §3553(a)(6), which calls for a reduction in unwarranted disparities among similarly situated defendants." See <u>United States v. Rattoballi</u>, 452 F.3d 127, 135 (2nd Cir. 2006) ("Every convicted felon suffers the indignity and ill-repute associated with a criminal conviction"). DeMaio's situation is no different from any other upper middle class defendant living with his wife and children, convicted for the first time of a serious felony, who is facing the impact his actions are going to have on his family.

While it is likely that DeMaio's family will suffer some financial hardship if he is

imprisoned, that is of course entirely of DeMaio's own making.  Nor does DeMaio seem to be planning for that possibility by tightening his family's belt.  To the contrary, according to publicly available information, the DeMaios recently moved into a $500,000, four-bedroom, 2 ½ bath, 2500 square foot home on a 1.8 acre lot in North Andover.

Although DeMaio claims he is the "sole breadwinner" for his family, the PSR states that Mrs. DeMaio is employed, which is corroborated further by DeMaio's bankruptcy schedules attached to the PSR.  None of DeMaio's children are infants (they are 11 and 13 years old), and all attend school during the day.  His assertion that it would be an "impossible task" for his wife to juggle a full-time job and care for the four children would likely come as a surprise to other single parents in this country, many of whom are unlikely to have the financial advantages of the DeMaios.  DeMaio's assertion that he "plays a significant role in caring for the children" is neither explained nor supported by any evidence.

Again, the cases cited by DeMaio only serve to highlight how unremarkable his situation is and how undeserving of the probationary sentence he is seeking.

The defendant in <u>United States v. Norton</u>, 218 F.Supp. 2d 1014, 1017 (E.D. Wis. 2002), was a single mother with three children, including one infant, and was the sole caretaker for her elderly mother.  The evidence presented to the sentencing court established that she had no family members available to take her children, and that they would instead be placed in state custody.  In granting the departure, the judge stated that a court "should not depart based on generic concerns about breaking up a family," that the guidelines "do not contemplate a discount for parents of children," and that to merit a departure, it must be shown that the period of incarceration would "have an effect on the family or family members beyond the disruption to family and parental relationships that would be

9

present in the usual case." Id. at 1019. Unlike Norton, DeMaio has a mother, sister and brother who all live in eastern Massachusetts and there is no evidence that they would be unable or unwilling to assist the DeMaios - if such assistance was even needed - during his period of incarceration.

In United States v. Roselli, 366 F.3d 58 (1st Cir. 2004), the defendant had two children (ages 1 and 9) with cystic fibrosis and a wife who suffered from several illnesses. The defendant established the extraordinary harm that would result if he were incarcerated with letters from a doctor, two nurses, and a social worker familiar with his children's condition, as well as letters from his wife, his wife's doctor and his mother-in-law outlining their daily home life, his wife's illnesses, the substantial care they all require from the defendant, and the inability of others to adequately replace the services and care he provided. Id. at 63, 69-70. Nothing comparable is present in this case.

Finally, in United States v. LaCarubba, 184 F.Supp. 2d 89 (D. Mass. 2002), Judge Gertner departed after finding that the defendant was an irreplaceable care giver to his wife of thirty years who was dying of liver cancer. In doing so, she noted that "[i]f this departure means other offenders without dying spouses get longer sentences, so be it." Id. at 99.

**Conclusion**

For all the above reasons, the government requests that the Court reject DeMaio's motion for a downward departure and sentence him at the low end of advisory sentencing guidelines range, impose a fine in the amount of $4,000, a $100 mandatory special assessment and one year of supervised release. In addition, as DeMaio has agreed in the plea agreement, the Court should order him to : (a) Cooperate with the Examination and Collection Divisions of the Internal Revenue Service; (b) Provide to the Examination Division all financial information necessary to determine

DeMaio's prior tax liabilities;  (c) Provide to the Collection Division all financial information necessary to determine DeMaio's ability to pay; (d) File accurate and complete tax returns for those years for which returns were not filed or for which inaccurate returns were filed or, in lieu of filing such return(s), agree to an assessment with the IRS for any years for which an inaccurate return was filed; and (e) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties.

                                          Respectfully submitted,

                                          MICHAEL K. LOUCKS
                                          Acting United States Attorney

                         By:    *s/Mark J. Balthazard*
                                          MARK J. BALTHAZARD
                                          Assistant U.S. Attorney

Date: October 15, 2009

### Certificate of Service

     I hereby certify that on October 15, 2009, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                          /s/ Mark J. Balthazard
                                          MARK J. BALTHAZARD
                                          Assistant U.S. Attorney